UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE


MARTIN BISHOP,

        Plaintiff,

                                       CASE NO. 16-CV-01123

v.                                       HON. GEORGE CARAM STEEH

HAMYA, INC., HUSNI HASSAN,
and METROPOLITAN
GOVERNMENT OF NASHVILLE
AND DAVIDSON COUNTY,
TENNESSEE,

        Defendants.

_____/

**OPINION AND ORDER DENYING DEFENDANT
METROPOLITAN GOVERNMENT OF NASHVILLE
AND DAVIDSON COUNTY'S SECOND
<u>MOTION FOR SUMMARY JUDGMENT (DOC. 128)</u>**

      This negligence action based on diversity jurisdiction arises out of a

tragic accident: Plaintiff Martin Bishop was assaulted outside a

convenience store and left unconscious and prone in the middle of the

street, when a tow truck, driven by James Lyons, an employee of

Defendant Metropolitan Government of Nashville and Davidson County

("Metro"), ran him over causing catastrophic injuries and rendering him a

paraplegic. Plaintiff contends that he suffered injuries because Mr. Lyons

breached his duty to exercise care in avoiding colliding with pedestrians.

The matter is presently before the Court on Metro's second motion for

summary judgment. For the reasons stated below, Metro's second motion for summary judgment shall be DENIED.

## I. Factual Background

On January 13, 2016, Plaintiff and another individual, David Light, were going to visit the Z-Mart convenience store on Lafayette Street in Nashville, Tennessee. (Doc. 1 at PageID 2). According to Mr. Light's testimony, as Plaintiff and Mr. Light approached the store, they were both confronted by a group of individuals attempting to sell them drugs. (Doc 1 at PageID 3). Plaintiff refused to buy the drugs and so the drug dealers attempted to rob Mr. Light and Plaintiff by demanding an unspecified amount of money while pointing guns in the faces of Plaintiff and Mr. Light. (Doc 128-4 at PageID 1851). Plaintiff refused to pay the drug dealers and so they began to jump on him and beat him. Mr. Light and Plaintiff attempted to flee by running down Lafayette Street and waving down drivers. (Doc 128-4 at PageID 1853).

Mr. Light claims that one of the assailants smashed Plaintiff in the face with a rock, knocking him unconscious on the left lane of Lafayette Street (the Traffic Collision Report states that Plaintiff was hit in the back of the head so it is not clear what part of Plaintiff's head was hit but it is clear that wherever he was hit, it knocked him unconscious). (*Id.*). The assailants

emptied Plaintiff's pockets and fled. Mr. Light asserts that he immediately approached Plaintiff to help him regain consciousness. (*Id.*). As soon as Plaintiff began to regain consciousness, Mr. Light stated that he noticed a tow truck about two car lengths away coming directly at them. (Doc 128-4 at PageID 1855). The driver of the tow truck was an employee of Defendant Metro: Mr. James Lyons. (Doc 148 at Page ID 2391). Mr. Lyons was transporting a police cruiser back to the Metro facility when Mr. Light saw his tow truck. (*Id.*). The critical sequence of events that follow are disputed by both parties.

Defendant claims that after turning onto Lafayette Street, Mr. Lyons kept a constant forward lookout after checking his mirrors to ensure the tow load was tracking properly. (Doc 130 at PageID 2009). Defendant claims that Mr. Lyons saw Mr. Light standing in the road waving his hands. (*Id.*). Mr. Lyons immediately used the brakes and swerved left to avoid injuring Mr. Light. (*Id.*). Mr. Lyons then inadvertently hit Plaintiff and dragged him several feet which resulted in severe injuries to Plaintiff. (Doc 130 at PageID 2012). Defendant asserts that Mr. Lyons was distracted by Mr. Light waving his arms and so Mr. Lyons never saw Plaintiff lying on the road. (Doc 130 at PageID 2011).

Plaintiff claims that after turning onto Lafayette Street, Mr. Lyons was not constantly looking forward but was checking the tow load in his side-view mirrors and saw Mr. Light as soon as he looked forward. (Doc 148 at PageID 2393). Plaintiff does not dispute that Mr. Lyons immediately hit the brakes when he saw Mr. Light waving his hands and swerved left to avoid Mr. Light. (Doc 148 at PageID 2395). The tow truck hit Mr. Bishop and dragged him several feet which resulted in severe injuries to Mr. Bishop. (*Id.*). Plaintiff asserts that there is no indication Mr. Lyons was distracted by Mr. Light. (*Id.*).

The court must view the facts and all reasonable inferences from those facts in the light most favorable to the non-moving party. Thus, the court will adhere to the Plaintiff's version of the facts.

After Mr. Lyons brought his tow truck to a stop, Mr. Light asserts that he told Mr. Lyons to back his vehicle up because it was stopped on top of Plaintiff's head. (Doc 128-2 at PageID 1730). Mr. Lyons states that he backed his vehicle up about twenty feet in the eastbound lanes of Lafayette Street. (*Id.*). Investigator of the Metro Police of Nashville, John Roberson, testified that the road was not very well lit at the time and that the area where the incident occurred was "sort of dark." (Doc 128-7 at PageID 1890). Additionally, Plaintiff was wearing some sort of dark clothing at the

time of the incident, possibly even a camouflage suit. (Doc 128-3 at PageID 1845).

## II.    Standard of Review

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001).  The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice.  The procedure is not a disfavored procedural shortcut.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (*quoting Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. *McLean*, 224 F.3d at 800 (*citing*

*Anderson*, 477 U.S. at 252).

## III. Analysis

## A. Negligence

This is an action arising under federal diversity of citizenship. Plaintiff, though homeless at the time of the incident, was most recently a resident of the state of California and Defendant is a resident of Tennessee. As this is a diversity case, the substantive law of the forum state controls. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Under Tennessee law, in order to establish a prima facie case of negligence, a plaintiff  must prove " (1) a duty of care owed by defendant to plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal cause." *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995).

Defendant argues that Plaintiff cannot establish that Mr. Lyons was negligent because Plaintiff cannot prove the following critical elements: (1) that Mr. Lyons owed a common law or statutory duty of care to Plaintiff; (2) that Mr. Lyons breached such duty; (3) that any such breach actually caused the accident; (4) or that any such breach was a "substantial factor" in causing the accident. (Doc 129 at PageID 1902). Plaintiff responded to Defendant's motion for summary judgment by arguing that Defendant

Metro's employee, Mr. Lyons, owed a duty to Plaintiff; Lyons breached this duty, and Lyons caused the severe and catastrophic injuries to Plaintiff.

### 1. Duty

Whether or not Mr. Lyons owed a duty to Plaintiff is a question of law for the Court to determine and it comes down to the disputed interpretation of two critical parts in the Tenn. Code. Ann. § 55-8-136. Additionally, there is no controlling case determining whether a driver had a duty to avoid colliding with a pedestrian lying on the roadway, so in this case, the Court has the discretion of first impression. It is appropriate for the Court to reach its own decision even if state courts have not addressed the exact question, so long as well-established principles exist to govern a decision. *State Auto Prop. & Cas. Ins. Co. v. Hargis*, 785 F.3d 189, 194 (6th Cir. 2015).

The Tennessee Code Annotated Section 55-8-136 codifies the duty of care that drivers owe to pedestrians:

> (a) Notwithstanding the foregoing provisions of this chapter, every driver of a vehicle shall exercise due care to avoid colliding with any **pedestrian** upon any roadway, and shall give warning by sounding the horn when necessary, and shall exercise proper precaution upon observing any child or any confused or incapacitated person upon a roadway.

(b) Notwithstanding any speed limit or zone in effect at the time, or right-of-way rules that may be applicable, every driver of a vehicle shall exercise due care by operating the vehicle at a safe speed, by maintaining a safe lookout, by keeping the vehicle under proper control and by devoting full time and attention to operating the vehicle, under the existing circumstances as necessary in order to be able to see and to avoid endangering life, limb or property and to see and avoid colliding with any other vehicle or person, or any road sign, guard rail or any fixed object either **legally using** or legally parked or legally placed, upon any roadway, within or beside the roadway right-of-way including, but not limited to, any adjacent sidewalk, bicycle lane, shoulder or berm.

Tenn. Code. Ann. § 55-8-136 (emphasis added).

Defendant argues that the Tenn. Code. Ann. § 55-8-136 does not apply to Plaintiff because Plaintiff cannot establish that he was among the class of persons whom the statute intended to protect. Specifically, Defendant argues that Plaintiff was not a *pedestrian* and was not *legally using* the road within the meaning of the statute. Because Plaintiff was lying incapacitated on the road, Defendant argues that he was not *afoot* and therefore was not a *pedestrian*. Further, Defendant claims that because Plaintiff was lying on the street between adjacent intersections and *not at a crosswalk*, he was not *legally using* the road and he is therefore unprotected by the statute.

Plaintiff disputes this interpretation of the statute by looking to the intent of the legislature. Plaintiff argues that the purpose of this section of the statute is not to allow motorists to run over people who are not actively walking, rather, the purpose is to differentiate between modes of transportation – i.e. vehicular compared to pedestrian. (Doc 147 at PageID 2306). Here, Plaintiff asserts that there is no question he was walking on the night of the incident and was not using any mode of vehicle for travel so he was a *pedestrian* within the meaning of the statute. Because he was lying incapacitated and rendered unconscious by third parties does not remove him from the intended definition of a pedestrian.

Moreover, courts are not to apply a particular interpretation to a statute that would yield an absurd result. *State v. Fleming*, 19 S.W.3d 195, 197 (Tenn. 2000). Plaintiff argues that Defendant's claim that Plaintiff was not a *pedestrian* because he was lying incapacitated on the street instead of walking upright is the type of absurd result that Tennessee law prohibits. Plaintiff also argues that Defendant's interpretation of the phrase, *legally using*, would contribute to an absurd result. Plaintiff asserts that the protections within the statute are not limited only to pedestrians with a right of way within a crosswalk. (Doc 147 at PageID 2307). Rather, the statute intends to protect anyone on the road and requires motorists to maintain a

"safe lookout" and to "avoid endangering life, limb, or property" in addition

to "avoid colliding with any other vehicle or person … legally using … any

roadway." Tenn. Code Ann. § 55-8-136(b). In support of his argument that

Defendant's strained interpretation of the statute would produce an absurd

result, Plaintiff cites to a Tennessee Court of Appeals case where the court

held that a motorist "must anticipate the presence of pedestrians not only at

street crossings but between street intersections and must exercise due

care to avoid injuring them." *DeRossett v. Malone*, 239 S.W.2d 366, 374

(Tenn. Ct. App. 1950). However in its Reply Brief, Defendant distinguishes

the *DeRossett* case from the facts at issue by pointing out that the

*DeRossett* Court found "no evidence to show that traffic control signals

were in operation at both the intersections between which the accident

occurred," and so the court held it to be legal for a pedestrian to use any

portion of the street to cross it. (Doc 152 at PageID 2415). Here, the police

report does not mention any issue with traffic signals at the intersection but

the Traffic Collision Report concluded that the area of the incident was

poorly lit. (Doc 128-2 at PageID 1794).

Regardless, these precedential Tennessee cases only address

whether the driver had a duty to avoid colliding with an observed

pedestrian. There is no controlling case involving the collision of a

pedestrian lying on the roadway and so the Court has the discretion of first impression. Defendant asks the Court to look to the law of other states in addressing novel legal questions and points the Court to the common law of North Carolina. There is generally no duty to anticipate that a pedestrian would be lying or sleeping on the travelled portion of the highway in North Carolina. *Clemons v. Williams*, 300 S.E.2d 873, 876 (N.C. 1983); *Battle v. Chavis*, 147 S.E.2d 387, 390 (N.C. 1966) (driver not negligent where dark clothes of deceased blended into the background of the dark pavement making it unreasonable to expect the driver to see the victim even though driving at a slow rate of speed). But in *Clemons*, the court held that a jury question existed as to whether the driver acted negligently in striking a pedestrian lying on the highway where the motorist was warned by headlights and the presence of another stopped car of the decedent. *Id.* Likewise, in this case, Mr. Lyons was warned of Plaintiff's presence by Mr. Light who stood on the side of the road vigorously waving his arms. Thus, even under North Carolina law, a genuine issue of material fact exists as to whether Mr. Lyon breached a duty to avoid the collision.

Although other courts have found that voluntarily lying on the road amounts to presumptive negligence, this does not necessarily exonerate the motorist whose fault is still considered in comparison to the fault of the

pedestrian.  *See Nickell v. Russell*, 525 N.W.2d 203, 211 (Neb. 1995)

(collecting cases).   Significantly, this case does not involve Plaintiff's

*voluntarily* lying in the road, but rather, Plaintiff was the victim of a crime

which resulted in his unfortunate situation.  Under these circumstances

where multiple alleged tortfeasors, albeit some non-parties, are involved,

as opposed to the alleged contributory negligence of the Plaintiff himself,

the fact that Plaintiff was lying prone on the road is not dispositive of Mr.

Lyon's duty under the law. Additionally, Defendant attempts to distance

himself from responsibility by arguing the pedestrian (Plaintiff in this case)

has a duty to "exercise ordinary care for his own safety." *Tri-State Transit

Co. of La., Inc. v. Duffey*, 173 S.W.2d 706, 710 (Tenn. Ct. App. 1940)

(quoting *Pryor's Adm'r v. Otter*, 105 S.W.2d 564, 567 (Ky. Ct. App. 1937)).

The Court finds Plaintiff's argument more persuasive and agrees that

the Plaintiff *was* a pedestrian within the meaning of the statute and that

Plaintiff is still owed a duty from Mr. Lyons even though Plaintiff was not

legally in a crosswalk. The Court cannot ignore the context of the situation

and the tragic sequence of events that led to Plaintiff lying incapacitated in

the middle of the street. It would be absurd to conclude that Plaintiff is not

within the statute's protected class of persons because he was chased,

robbed, and knocked unconscious by third parties. Additionally, as

Defendant has stated, "the question of what duties exist toward unseen persons lying in the road is an issue of first impression in Tennessee;" thus, without any controlling case, the Court has discretion to reach its own decision. (Doc 129 at PageID 1909). Therefore, in viewing the facts and all reasonable inferences from those facts in the light most favorable to the non-moving party, the Court finds that Mr. Lyons, a motorist on a Tennessee road, owed a duty of care to avoid injuring Plaintiff, a pedestrian lying incapacitated on the road.

## 2.   Breach

In order to determine whether a breach of duty has occurred, the Court must determine "whether the defendant acted as a reasonably prudent person would act under the circumstances." *Hickman v. Jordan*, 87 S.W.3d 496, 499 (Tenn. Ct. App. 2001). "If the defendant has not exercised reasonable care, then he has breached his duty to the plaintiff and is liable for negligence." *Id.* It is undisputed that there is a statutory and common law duty for motorists in Tennessee to keep a proper lookout ahead in addition to watching "traffic and pedestrians on each side and to the rear." *Strickland Transp. Co. v. Douglas*, 264 S.W.2d 233, 237 (Tenn. Ct. App. 1953).

Plaintiff claims that Mr. Lyons breached his duty of care because Mr. Lyons "unreasonably kept his attention focused on the towed vehicle and only noticed Mr. Light when he finally turned his attention in the direction he was driving." (Doc 147 at PageID 2311). Additionally, Plaintiff asserts that Mr. Lyons was statutorily required to use his high beams "because there was no traffic and the ambient lighting was not sufficient to render clearly discernible persons five hundred feet ahead" but Mr. Lyons failed to do so. Tenn. Code Ann. § 55-9-407. Further, Plaintiff argues that Mr. Lyons is not credible because he made contradictory statements regarding the sequence of events. In his initial statement given to police and in his deposition, Mr. Lyons stated that after he completed his turn onto Lafayette Street, he checked his side-view mirrors to ensure his load was tracking properly and as soon as he looked up ahead he saw Mr. Light waving his arms and so he swerved left and slammed on the breaks. (Doc 128-5 at PageID1870) (Doc 128-2 at PageID 1806). However, later in his declaration, Mr. Lyons contradicted his earlier statements when he said, "during the entire time I was on Lafayette Street up until the accident I kept a constant forward lookout while keeping an eye on my side-view mirrors" (Doc 135 at PageID 2069).

Clearly, Defendant disputes Plaintiff's version of events as it asserts that the evidence shows Mr. Lyons was keeping a proper lookout to both the front and sides of his tow truck and was therefore acting as any reasonably prudent person would. Additionally, Defendant argues that its tow truck was recently inspected and working properly at the time of the accident and that his usage of standard beam lights at the time followed the appropriate standard under Tennessee law. Specifically, Defendant disputes Plaintiff's claim that Mr. Lyons was required to use high beams because his use of standard beams was enough to "produce a driving light sufficient to render clearly discernible a person two hundred feet (200') ahead." Tenn. Code Ann. § 55-9-406(a).

The Court is sympathetic to the fact that Mr. Lyons kept his tow truck in good shape and took general protective measures when driving; however, at this early juncture, the Court cannot find as a matter of law that Mr. Lyons acted reasonably at the time of the accident. Mr. Lyons was driving in a poorly lit area that he was familiar with. He also had a little over four hundred feet after turning onto Lafayette Street to observe and avoid colliding with Plaintiff. If Mr. Lyons was exercising reasonable care by keeping a proper lookout ahead, he may have been able to avoid colliding with Plaintiff. Further, Defendant concedes there was a "reduced visibility

profile" because "it was dark," and so the Court finds that a reasonably prudent person in that situation might have done more to improve visibility such as using his/her high beams. (Doc 129 at PageID 1917). Whether or not the situation required Mr. Lyons to be using his high beams will be determined after properly qualified experts testify. However, based on the submitted evidence, it is not inconceivable that a driver should have been using his high beams under the circumstances. While Defendant might persuade the jury that Mr. Lyons acted reasonably by using the brakes and swerving away after observing Mr. Light waving his arms, the Court cannot find his conduct reasonable as a matter of law at this juncture. Unfortunately, Mr. Lyons did not realize he drove over and dragged Plaintiff by his head several feet. In viewing the facts and all reasonable inferences from those facts in the light most favorable to the non-moving party, the Court finds that a genuine issue of material fact exists as to whether Mr. Lyons breached his duty to avoid injuring or colliding with pedestrians.

### 3.    Causation

#### a.    Actual Cause

"[N]o negligence claim can succeed unless the plaintiff can first prove that the defendant's conduct was the cause in fact of the plaintiff's loss."

*Waste Mgmt.*, *Inc. of Tennessee v. S. Cent. Bell Tel. Co.*, 15 S.W.3d 425, 430 (Tenn. Ct. App. 1997). Plaintiff argues that Mr. Lyons' behavior of driving his tow truck on top of Plaintiff's head and dragging him several feet is the actual cause of the severely traumatic injuries he suffered. Defendant does not directly dispute this argument, instead, Defendant asserts that even if Mr. Lyons was looking straight ahead at all times, he still would have hit Plaintiff because he was distracted by attempting to avoid Mr. Light waving his arms. Through his expert testimony, Defendant details how it would have been impossible for Mr. Lyons to avoid Mr. Light because of his dark clothing and the lux necessary to illuminate Mr. Light from his truck's location was not possible with Mr. Lyons' standard beam headlights. (Doc 129 at PageID 1917). The Court considers Defendant's argument that Mr. Light waving his arms was an unavoidable distraction to Mr. Lyons that actually caused Plaintiff's catastrophic injuries and finds it an insufficient basis upon which to grant summary judgment. The Court agrees with Plaintiff that Mr. Lyons driving his tow truck on top of Plaintiff's head and dragging him about twenty feet is what actually caused Plaintiff's loss and injuries.

### b.    Proximate Cause

Having found proof of actual cause exists, the court turns now to the more difficult question of proximate cause.  The Tennessee Supreme Court has set out a three-prong test for assessing proximate causation:

> (1) The tortfeasor's conduct must have been a "substantial factor" in bringing about the harm being complained of; and (2) there is no rule or policy that should relieve the wrongdoer from liability because of the manner in which the negligence has resulted in the harm; and (3) the harm giving rise to the action could have reasonably been foreseen or anticipated by a person of ordinary intelligence and prudence.

*McClenham v. Cooley*, 806 S.W.2d 767, 775 (1991).  "[P]roximate cause is a jury question unless the uncontroverted facts and inferences to be drawn from them make it so clear that all reasonable persons must agree on the proper outcome."  *Id.* Plaintiff's main argument is that Mr. Lyons was "not attentive to his surroundings" by not looking out ahead after turning and failing to use his high beams which resulted in Mr. Lyons running over Plaintiff's head with his tow truck. Together, Plaintiff asserts that this is what proximately caused his injuries. (Doc 147 at PageID 2321).

On the other hand, Defendant provides several explanations for what proximately caused Plaintiff's injuries. First, Defendant relies on the argument that the distraction created by Mr. Light waving his arms was a

substantial factor in causing Plaintiff's injuries because it forced Mr. Lyons to focus his attention on avoiding colliding with Mr. Light. Second, the dark nature of Plaintiff and Mr. Light's clothing and Plaintiff and Mr. Light's decision to be present in the middle of the road created an emergency situation that together were substantial factors in proximately causing the accident. Defendant then provides alternative explanations in the event the Court does not find Plaintiff responsible for the accident such as the *unavoidable accident doctrine*. Defendant asks the Court to grant summary judgment in its favor because an "unavoidable accident in its simplest terms is nothing more than a lack of negligence on the part of any party." *Whitaker v. Harmon*, 879 S.W.2d 865, 870 (Tenn. Ct. App. 1994). Additionally, Defendant cites to multiple cases where courts held negligent defendant drivers were not the proximate cause of a plaintiff's injuries as a matter of law.

The Court finds that the proximate cause of Plaintiff's injuries is inconclusive. There are many factors that played a part in causing Plaintiff's horrific injury; however, it is impossible at this stage to say what the most substantial factor was. These factors include: the assault and attempted robbery of Plaintiff that placed him unconscious in the middle of the street; the camouflage and dark clothing worn by Plaintiff and Mr. Light; the poorly

lit street; whether Mr. Lyons should have used his high beams; and whether Mr. Lyons was looking out ahead after he made his turn. Both parties may proceed at trial by providing qualified expert testimony. There are several genuine issues of material fact and neither party has presented evidence that is so one-sided that it must prevail as a matter of law.

The Court also notes that there may be more than one proximate cause of Plaintiff's injuries. Even if Plaintiff's own conduct, the conduct of the convenience store owner, or the perpetrators of his assault, were also proximate causes of his injuries, he may still recover against Metro if he proves first, that Mr. Lyons' negligence proximately caused his injuries, and second, that Plaintiff's own fault is less than the combined fault of all tortfeasors. *McIntyre v. Balentine*, 833 S.W.2d 52, 58 (Tenn. 1992); *see also Grandstaff v. Hawks*, 36 S.W.3d 482, 491 (Tenn. 2000) (discussing Tennessee's modified comparative fault scheme); *Owen v. Truckstops of America*, 915 S.W.2d 420, 430 (Tenn. 1996) ("where the separate, independent negligent acts of more than one tortfeasor combine to form a single indivisible injury, each tortfeasor will be liable only for that proportion of the damages attributable to its fault.").

Based on Tennessee's comparative fault scheme and the conflicting proofs in this case, there is sufficient evidence on which a jury could

reasonably find all the elements in favor of the Plaintiff and so Defendant's

motion for summary judgment will be denied.

## IV.    Conclusion

For the reasons stated in this opinion and order, Defendant Metro's

second motion for summary judgment (Doc. 128) is DENIED.

**IT IS SO ORDERED**.


Dated:  August 17, 2018

                              s/George Caram Steeh
                              GEORGE CARAM STEEH
                              UNITED STATES DISTRICT JUDGE